UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK FLAHERTY,

    Plaintiff,

vs.                                                                      CASE NO. 8:03-CV-531-T-17MAP

CITY OF ST. PETERSBURG, FLORIDA,
BRADLEY BRYAN, JAMES F. HALEY,

    Defendants.
_____/

## ORDER

This cause is before the Court on Defendants' Motion to Dismiss or for Summary Judgment, filed on March 31, 2003 (Dkt. 7), and response thereto, filed April 14, 2003 (Dkt. 12).

## BACKGROUND

On or about March 3, 2003, Plaintiff in this action, PATRICK FLAHERTY ("Flaherty"), filed a complaint against Defendants, CITY OF ST. PETERSBURG (the "City"), BRADLEY BRYAN ("Bryan") and JAMES F. HALEY ("Haley") in the Sixth Judicial Circuit, Pinellas County, Florida. (Case No. 03-1775-CI-19). Plaintiff requested damages, attorney's fees, and costs of the suit for alleged constitutional rights violations and claims that he was subjected to false arrest, excessive use of force, assault and battery, and malicious prosecution, stemming from his arrest on May 13, 1999. (Dkt. 2).

On March 25, 2003, Haley filed a Notice of Removal to the United State District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1446 (2005). (Dkt. 1). Plaintiff's original complaint was then filed with this Court on the same date. (Dkt. 2).

On March 31, 2003, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment based on the existence of probable cause and qualified immunity for the Defendants. (Dkt. 7). Plaintiff filed a Response on April 14, 2003, claiming there was no probable cause, which would preclude a qualified immunity defense and would, therefore, present a genuine issue of material fact. (Dkt. 12). The parties involved also filed affidavits containing conflicting facts. These "facts" are summarized below.

Plaintiff alleges that on May 13, 1999, he and ROGER DESROSIERS ("Desrosiers") were inside a warehouse in St. Petersburg when someone began banging on the door to the warehouse. (Dkt. 13). Desrosiers opened the door and stepped outside while Plaintiff held Desrosiers' dogs. Id. Plaintiff claims that after he heard Desrosiers yelling for help, he stepped outside and observed two men in plain clothes kicking and punching Desrosiers. Id. Plaintiff yelled for the men to get away from Desrosiers and turned to go inside to call the police when one of the men grabbed him from behind. Id. Plaintiff was then allegedly thrown to the ground, hit, and kicked by the two individuals, later identified as Haley and Bryan. Id.

Defendants claim that while functioning as part of a task force or mutual aid agreement, they were driving through a section of St. Petersburg in an unmarked car pursuing a man who had fled arrest in St. Petersburg. (Dkt. 7-9). In the course of their investigation, Desrosiers, appearing intoxicated, stepped into the path of their vehicle with a bottle in his hand, at which time the Defendants stopped the vehicle. (Dkt. 8-9). Desrosiers allegedly threatened the Defendants, punched one of them, and told them he had a gun inside the warehouse before running in that direction. Id. Defendants exited the car, identified themselves as police officers, and ordered Desrosiers to get on the ground. Id. Desrosiers was placed under arrest, and while he was sitting on the ground and yelling obscenities, Plaintiff came out of the warehouse and allegedly threatened the Defendants. Id. Desrosiers reportedly informed Plaintiff that the Defendants were "the sheriffs" and recommended that Plaintiff go inside the warehouse. Id. Defendants then attempted to stop Plaintiff from re-entering the warehouse due to the presence of Rottweiler dogs and Desrosiers' gun, and a scuffle ensued, after which Plaintiff was placed under arrest. Id.

**STANDARD OF REVIEW**

The Court treats Defendants' Motion as seeking summary judgment, since the Defendants, as well as Plaintiff, have presented evidence, namely affidavits, of the sort referred to in Rule 56 of the Federal Rules of Civil Procedure, thus requiring the Court to treat the motion as one for summary judgment.

A summary judgment motion is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2004). The moving party bears the initial burden of

demonstrating that there are no genuine issues of material fact, and must identify portions of the record to show this absence. Celotex v. Catrett, 477 U.S. 317, 323 (1986). There is a genuine issue if the record contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party has met its burden of showing the non-existence of a genuine issue of material fact, the non-moving party must go beyond the pleadings to show that a genuine issue indeed exists for trial. Celotex, 477 U.S. at 324.

## DISCUSSION

### I.     Defendants Bryan and Haley Had Arguable Probable Cause to Arrest Plaintiff.

Defendants claim that probable cause exists, which would require they be granted summary judgment with regard to all but the Assault and Battery count, which should be dismissed because it is subsumed within the False Arrest claim. Plaintiff responds that there was no arguable or actual probable cause, which would render a genuine issue of material fact in regard to the presence of probable cause.

A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Brescher v. Von Stein, 904 F.2d 572, 578 (11th Cir. 1990). Therefore, in order to show probable cause, the Court must consider the Defendants' knowledge at the time of the arrest. Though Haley's testimony at a Motion to Dismiss hearing indicated that Flaherty had done nothing illegal at the time of his arrest (Dkt. 14), the officers had reason to believe that if he had been allowed to re-enter the warehouse, he may have committed a crime by retrieving the gun allegedly inside, and using it on the officers. Thus, Bryan and Haley could have reasonably believed that Flaherty was about to commit an offense if he had been allowed to enter the warehouse, giving the officers probable cause to make the arrest. Even assessing the facts in the light most favorable to Plaintiff, who had no knowledge of Desrosiers' statements to the police officers, the Defendants had probable cause to arrest and detain Plaintiff due to their knowledge of a gun inside the warehouse.

In a case with similar facts, where a man moved away from law enforcement officers and inside a house to signal for a video camera, the Sixth Circuit found that the officers reasonably restrained the man. Feathers v. Aey, 319 F.3d 843, 851-852 (6th Cir. 2003). Plaintiff in the

3

instant case admits that he turned from the Defendants "to go inside and call the police," which the Defendants observed as a threatening movement. Thus, the Defendants' detention of and use of handcuffs on the Plaintiff were necessary to ensure the officers' safety.

Both federal and Florida law require an arrest to be objectively reasonable based on the totality of the circumstances for probable cause to exist. Bailey v. Board of County Comm'rs, 956 F.2d 1112, 1119 (11th Cir. 1992). According to the information available to Bryan and Haley at the time, it was objectively reasonable for them to arrest Flaherty. Defendants encountered Flaherty after arresting Desrosiers, who had indicated that there was a gun inside the warehouse. Defendants also knew there were two Rottweiler dogs inside the warehouse that could have attacked them. If Flaherty had been allowed to move inside the warehouse, he could have accessed the gun and used it against the officers, and he also may have released the dogs to attack Bryan and Haley. Interestingly, Plaintiff alleges in his own affidavit that he held the dogs while Desrosiers opened the door to the warehouse (Dkt. 13), lending credibility to the Defendants' assertion that the dogs would attempt to move outside and possibly attack if allowed to do so. This information supports the officers' decision to arrest Flaherty.

Additionally, Plaintiff's claim that Defendants were not authorized to operate under a mutual aid agreement due to lack of probable cause is incorrect since this Court finds probable cause to exist. Plaintiff's assertion that the officers should not have arrested him because they did not produce evidence of the existence of a gun inside the warehouse lends no support to the Plaintiff's case, since the Defendants could have reasonably believed that there was a gun inside the warehouse even if one did not exist.

**II.     Defendants are Entitled to Qualified Immunity on Counts I and III Due to the Existence of Probable Cause.**

Defendants Bryan and Haley argue that qualified immunity exists regarding Counts I and III because probable cause or arguable probable cause existed to arrest Flaherty. Plaintiff responds that there was no actual or arguable probable cause, and, thus, the issue of probable cause is a material issue in dispute.

"Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To be entitled to qualified immunity, law enforcement officers need only arguable

4

probable cause, so "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier v. Katz, 533 U.S. 194, 202 (2001). This Court, therefore, finds the requirements to invoke qualified immunity satisfied.

If the defendant can establish that he was acting within his discretionary authority, then the plaintiff has the burden to show that qualified immunity is not appropriate. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). Defendants clearly used their discretion as law enforcement officers when they decided to arrest Plaintiff due to several factors. The qualified immunity standard is broad enough to cover some "mistaken judgment," and it shields from liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343 (1986). Therefore, even if Plaintiff is correct in asserting that Defendants should have moved Desrosiers instead of arresting Plaintiff, the broad qualified immunity standard protects the Defendants' judgment.

Additionally, it appears that Defendants did not use excessive force in arresting Flaherty considering that "due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing." Krider v. Marshall, 118 F. Supp. 2d 704, 707 (S.D. W. Va. 2000) (quoting Tennessee v. Garner, 471 U.S. 1, 26 (1985)). From the Defendants' view, Plaintiff appeared intoxicated and acted in a threatening manner, which necessitated their use of only the reasonably necessary force to restrain and place him under arrest. As such, there is no genuine issue of material fact as is required to prevent summary judgment.

### III.     Plaintiff Does Not Have a Valid False Arrest or Malicious Prosecution Claim Because Defendants Had Probable Cause to Make the Arrest.

Defendants argue that Plaintiff's False Arrest and Malicious Prosecution claims are improper since probable cause did exist for the arrest. Plaintiff contends that the claims are valid

considering the absence of probable cause and the State Attorney's abandonment of the criminal charges against Plaintiff.

Probable cause constitutes an affirmative defense to a false arrest claim. Von Stein, 904 F.2d at 584. Therefore, since probable cause has now been found to exist with regard to the arrest in this case, Plaintiff cannot prevail on the False Arrest claim.

A plaintiff alleging malicious prosecution must prove both the absence of probable cause and the presence of malice in order to prevail. Gallucci v. Milavic, 100 So.2d 375, 378 (Fla. 1958). The State Attorney's Nolle Prosequi filing regarding the charges of Battery on a Law Enforcement Officer and Resisting Arrest without Violence has no bearing on the existence of probable cause for the arrest – it merely establishes that the State Attorney chose to abandon Plaintiff's criminal prosecution on those charges. Malicious prosecution could have occurred if the previous charges were pursued longer than necessary for an improper purpose or without probable cause, but that was not the case, since the State Attorney chose to abandon the proceedings. This Court, having established that probable cause existed to arrest Plaintiff, finds that the Malicious Prosecution claim cannot stand.

**IV.     The Assault and Battery Claim is Subsumed Within the False Arrest Claim.**

Defendants argue that the Assault and Battery claim is part of the False Arrest claim, and is, thereby, subsumed by it. Plaintiff contends that the Assault and Battery claim should not be absorbed given the differences between the governing case law and the facts in the instant case.

A claim of assault and battery is not an independent tort and is subsumed within the claim of false arrest, for which it is used to calculate damages. Lester v. City of Tavares, 603 So.2d 18 (Fla. 5th DCA 1992). Plaintiff seeks to distinguish the instant case by claiming that it dealt with incidents uncommon in the arrest of a person, which include sustaining injuries. The Court finds this argument unconvincing as injuries may occur within the normal course of an arrest, especially in Plaintiff's situation since he was held on the ground. Plaintiff's claim of Assault and Battery against the City is thereby absorbed by the False Arrest claim. Even if the Assault and Battery claim was not subsumed by the False Arrest claim, it is clear that Defendants used only the force necessary to subdue and arrest Plaintiff, and, therefore, their conduct is privileged because the force used was objectively reasonable. Accordingly, it is

CASE NO. 8:03-CV-531-T-17MAP

**ORDERED** that the Defendants' Motion for Summary Judgment (Dkt. 7) be **GRANTED** and the Clerk of Court is **DIRECTED** to enter judgment for the defendants and to close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 22nd day of July, 2005.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record